# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| INNOVATION VENTURES, LLC<br>d/b/a LIVING ESSENTIALS,<br>a Michigan limited liability | )<br>)<br>) Civil Action No. 2:08-cv-12711-GER-SDP<br>) |
| Plaintiff / Counterclaim Defendant, | ) Honorable Gerald E. Rosen<br>) |
| vs. | )<br>) |
| BODY DYNAMICS, INC.<br>d/b/a BDI MARKETING<br>an Indiana corporation, | )<br>)<br>)<br>) |
| Defendant/ Counterclaimant. | )<br>) |

## BDI MARKETING'S MOTION FOR A
## PRELIMINARY INJUNCTION AND HEARING

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant / Counterclaimant Body Dynamics, Inc. d/b/a BDI Marketing ("BDI") respectfully moves the Court for the entry of a preliminary injunction and order, enjoining Plaintiff / Counterclaim Defendant Innovation Ventures, LLC d/b/a Living Essentials ("Living Essentials"), its respective officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert and participation with Living Essentials, and each of them who receives notice directly or otherwise of such injunction, that requires Living Essentials to:

(1)     cease issuing any press releases, advertisements, letters, promotional materials, articles, or oral or other written statements, that falsely, misleadingly, or deceptively associate or otherwise imply that BDI's MINI THIN RUSH® products, or any other products sold by BDI, are the subject of a court ordered injunction and/or recall;

1

(2)    cease issuing any press releases, advertisements, letters, promotional materials, articles, or oral or other written statements, that falsely, misleadingly, or deceptively associate or otherwise imply that Living Essentials was successful in obtaining an injunction and recall order from a court relating to "6 Hour" energy products;

(3)    cease making any false or misleading description or representation of fact with respect to BDI or BDI's products;

(4)    cease from otherwise engaging in false advertising or deceptive trade practices with respect to BDI or BDI's products;

(3)    requiring Living Essentials to identify and recall from any third party any and all copies of press releases, advertisements, promotional materials, and letters complained of in BDI's brief in support of this Motion for Preliminary Injunction;

(4)    requiring Living Essentials to issue corrective press releases, advertisements, letters, promotional materials, articles, and e-mails to all individuals who received the false and misleading materials complained of in BDI's brief in support of this Motion for Preliminary Injunction that correctly and accurately identifies the trade dress and manufacturer of the product preliminarily enjoined by this Court in Civil Action No.: 2:08-CV-10983-PDB-MJH; and

(5)    file with the Court and serve upon BDI's counsel within fifteen (15) days after issuance of the injunction a written report filed under oath setting forth in detail the manner and form in which Living Essentials has complied with the injunction.

The entry of a preliminary injunction against Living Essentials is necessary to prevent BDI from continuing to be irreparably harmed by Living Essentials' false,

2

misleading and deceptive trade practices.  Living Essentials has used its false, misleading and deceptive press releases, advertisements, and letters to the trade in interstate commerce to unfairly compete in the marketplace with BDI with the intent and goal of diverting sales of BDI's products to Living Essentials.  These facts and evidence, which fully support BDI's request for injunctive relief, are set forth more fully in BDI's Brief In Support Of Its Motion For a Preliminary Injunction, in the Answer and Counterclaims on file herein, and by the exhibits thereto.

BDI respectfully requests this Court for a prompt hearing on this matter.

This is not an *ex parte* request.  BDI has provided notice to Living Essentials' counsel of this motion.  In these same efforts, counsel for BDI has complied with L.R. 7.1 and has sought concurrence in the relief sought by this motion.  Although no concurrence has been given as to all of the relief requested by BDI at this time, the parties have agreed to continue to discuss this matter.

Date:  July 25, 2008                              Respectfully submitted,

                                                  **Body Dynamics, Inc.**


                                                  /s/ Deborah J. Swedlow_____
                                                  J. Michael Huget
                                                  Deborah J. Swedlow
                                                  BUTZEL LONG
                                                  350 South Main Street, Suite 300
                                                  Ann Arbor, MI  48104

                                                  Telephone:  (734) 213-3628
                                                  Facsimile:  (734) 995-1777

                                                  Email:  huget@butzel.com
                                                          swedlow@butzel.com

Dean E. McConnell
Scott S. Morrison
KRIEG DEVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, IN  46204
Telephone:  (317) 636-4341
Facsimile:  (317) 636-1507

Email:  dmcconnell@kdlegal.com
        smorrison@kdlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> Mark A. Cantor
> Marc Lorelli
> 1000 Town Center - 22nd Floor
> Southfield, Michigan  48075
>
> Email:  mcantor@brookskushman.com
>         mlorelli@brookskushman.com

> /s/ Deborah J. Swedlow
> J. Michael Huget
> Deborah J. Swedlow
> BUTZEL LONG
> 350 South Main Street, Suite 300
> Ann Arbor, MI  48104
>
> Telephone:  (734) 213-3628
> Facsimile:  (734) 995-1777
>
> Email:  huget@butzel.com
>         swedlow@butzel.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **INNOVATION VENTURES, LLC** | ) |
| **d/b/a LIVING ESSENTIALS,** | ) |
| a Michigan limited liability | ) Civil Action No. 2:08-cv-12711-GER-SDP |
| | ) |
| Plaintiff / Counterclaim Defendant, | ) Honorable Gerald E. Rosen |
| | ) |
| vs. | ) |
| | ) |
| **BODY DYNAMICS, INC.** | ) |
| **d/b/a BDI MARKETING** | ) |
| an Indiana corporation, | ) |
| | ) |
| Defendant / Counterclaimant. | ) |

---

J. Michael Huget  - P39150
Deborah J. Swedlow - P67844
**BUTZEL LONG**
350 South Main Street, Suite 300
Ann Arbor, Michigan 48104

Telephone:  (734) 213-3110
Facsimile:  (734) 995-1777

Dean E. McConnell
Scott S. Morrisson
**KRIEG DEVAULT LLP**
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204

Telephone:  (317) 636-4341
Facsimile:  (317) 636-1507

*Attorneys for Defendant / Counterclaimant*

---

## BDI MARKETING'S BRIEF IN SUPPORT
## OF ITS MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

ISSUE PRESENTED .................................................................................... iii

I.    INTRODUCTION ............................................................................... 1

II.   BACKGROUND ................................................................................. 2

III.  ARGUMENT ...................................................................................... 7

    **A.**   BDI Has a Strong Likelihood of Success on the Merits ......................................... 8
    **B.**   BDI Has and Will Continue to Suffer Irreparable Injury Without an Injunction . 15
    **C.**   Issuance of the Injunction Will Not Cause Substantial Harm to Others .............. 16
    **D.**   The Public Interest Is Served by Truthful Advertising ....................................... 16

IV.   CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999) ..................................... 8, 9

*American Home Products Corp. v. Johnson & Johnson* .................................................. 17

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 689 (6th Cir. 2000) ......... 8

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) ............................................................................................................................ 7

*Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982)* .............. 16

*Estate of Presley v. Russen*, 513 F. Supp. 1339, 1382 (D. N.J. 1981) ............................ 17

*Innovation Ventures, LLC d/b/a Living Essentials v. N2G Distributing, Inc. et al.* ........... 1

*Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1229 (E.D. Mich. 1991)............. 15

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) ...................................................................................................................................... 15, 16

*Mexican Food Specialties Inc. v. Festida Foods Ltd.*, 953 F. Supp. 846, 854 (E.D. Mich. 1997).................................................................................................................................... 15

*Time Warner Cable Inc. v. DirectTV Inc.*, 497 F.3d 144, 161-162 (2d Cir. 2007) .......... 15

*Wynn Oil Co. v. American Way Serv. Corp.* 943 F.2d 595, 608 (6th Cir. 1991).............. 15

## STATUTES

15 U.S.C. § 1114.............................................................................................................. 4

15 U.S.C. § 1125(a) ..................................................................................................... 4, 6

15 U.S.C. § 1125(a)(1)(B)................................................................................................ 8

## ISSUE PRESENTED

Whether a preliminary injunction should issue enjoining Plaintiff / Counterclaim Defendant Innovation Ventures, LLC d/b/a Living Essentials (hereinafter "Living Essentials") from further committing acts of unfair competition by disseminating press releases, advertisements, and letters to the trade that falsely, misleadingly, and deceptively associate certain energy boosting products sold by Defendant / Counterclaimant Body Dynamics, Inc. d/b/a BDI Marketing (hereinafter "BDI") with a preliminary injunction and recall issued by this Court involving a different product and defendants?

     **BDI answers:**       **Yes**

## I.    <u>INTRODUCTION</u>

Living Essentials has misused and misrepresented to the public a preliminary injunction order it obtained in an unrelated case not involving Defendant BDI (or BDI's products) to create the false impression that BDI's product was the subject of a court ordered recall.  By issuing false, misleading and deceptive press releases, advertisements, and letters to the trade, Living Essentials has deliberately misled consumers regarding the nature and scope of a court order, which has resulted in irreparable damage to BDI.   For this reason, BDI seeks a preliminary injunction preventing Living Essentials from continuing this reckless behavior.

Specifically, on April 9, 2008 in case against unrelated defendants[1] this Court issued a narrowly-tailored Preliminary Injunction and Recall Order (hereinafter referred to as the "Recall Order") restraining the defendants in that litigation from copying trade dress of Living Essentials' "5 Hour Energy" product; the Court specifically rejected, however, any trademark claims based on the highly descriptive phrase "5 hour energy" and therefore did not issue an injunction on that claim.  Notwithstanding the limited nature of this preliminary injunction, Living Essentials has proceeded to create the false impression in the marketplace that (a) BDI was subject to the Recall Order, and (b) the Court recognized "5 Hour Energy" as a valid trademark.  Living Essentials' conduct has created havoc and confusion in the marketplace for competitors of Living Essentials, and more specifically, to BDI, disrupting BDI's business and unfairly competing with BDI.  This can hardly be said to have been done "accidently" or "innocently" but rather, was

---

[1] *See Innovation Ventures, LLC d/b/a Living Essentials v. N2G Distributing, Inc. et al.*, Case No. 08-cv-10983-PDB-MJH.  *See also* Exhibit D hereto.

clearly a calculated maneuver done by Living Essentials to unfairly squash competition in the energy shot business and divert sales of BDI's energy products to Living Essentials.

A preliminary injunction is the proper remedy to prevent Living Essentials from causing further economic harm to BDI and from otherwise unfairly competing with BDI. Every day that Living Essentials is allowed to continue to issue False Advertisements, or make other false statements complained of herein rather verbally or in writing and without corrective measures, causes the harm done to BDI to grow, in the form of lost sales, damaged customer relations, and loss of good will.

## II.    <u>BACKGROUND</u>

BDI is engaged in the business of selling diet aid supplements, over the counter pharmaceuticals, sexual enhancers, and energy boosters.  *See* Exhibit A, Declaration of Laura King, ¶ 2; hereinafter ("King Declaration, ¶ __").  BDI was founded in 1981 as a small mail order company.  *Id*.  Since its inception, BDI has evolved into a large marketer and distributor of over-the-counter pharmaceuticals and dietary supplements.  *Id.*  BDI's product lines are distributed primarily within the convenience store industry, where it has established itself as a category leader.  *Id.*  Thriving on a reputation of quality, innovation, and excellence in customer service, BDI has come to dominate the marketplace, achieving impressive sales results.  *Id.*

Since at least as early as September 28, 2007, BDI began marketing, promoting, selling, and offering for sale certain dietary supplements formulated as an energy booster under the MINI THIN RUSH® Trademark.  *See* Exhibit A, King Declaration, ¶ 3; Exhibit B.  The MINI THIN RUSH® Trademark is registered on the Principal Register of the United States Patent & Trademark Office as U.S. Trademark Registration

3,406,279.  *See* Exhibit A, King Declaration, ¶ 3.  The MINI THIN RUSH® dietary

supplement is sold by BDI in a liquid, capsule, and chewing gum form.  *See* Exhibit A,

King Declaration, ¶ 3; Exhibit B.  The MINI THIN RUSH® liquid and capsule energy

boosters are designed to provide the body with up to six (6) hours of energy.  *See* Exhibit

A, King Declaration, ¶ 3.

The MINI THIN RUSH® liquid and capsule energy boosters contain the highly

descriptive phrase "6 Hour Energy!" at the top of the label.  *See* Exhibit B.  This highly

descriptive phrase is used to describe a characteristic, function, feature, purpose and use

of the energy boosters.  *See* Exhibit A, King Declaration, ¶ 4.  The MINI THIN RUSH®

liquid energy drink is sold as a two ounce energy shot in a small bottle.  *See* Exhibit A,

King Declaration, ¶ 5.  The term "shot" is a commonly used term in the energy drink

industry to refer to a smaller, higher powered energy drink containing more active

ingredients, that is typically sold in a two 2 or 2.5 ounce fluid bottle.  *See* Exhibit A, King

Declaration, ¶ 6.  Energy shots are designed to be consumed in seconds, as opposed to

canned energy drinks that typically require the individual to force down a lot of liquid to

feel the same affect as that provided by the smaller energy shot.  *Id.*

Living Essentials sells an energy drink in the form of a shot that is also designed

to provide the body with an energy boost.  *See* Exhibit C.  As Living Essentials' product

description on its website states: "We named it 5-Hour Energy for a reason.  People

typically feel an elevated sense of energy, focus and alertness for about five hours."  *See*

Exhibit C.  As such, Living Essentials' dietary supplement is designed to provide energy

for about five (5) hours.  BDI and Living Essentials are competitors in the energy booster

market.  *See* Exhibit A, King Declaration, ¶ 7.

On March 7, 2008, Living Essentials filed a Complaint with this Court against N2G Distributing, Inc. and Alpha Performance Labs (collectively hereinafter "N2G"). *See* Exhibit D, Case No. 2:08-cv-10983-PDB-MJH, Document 1. Living Essentials' Complaint against N2G alleged that N2G was committing federal trademark infringement and counterfeiting under 15 U.S.C. § 1114, false designation of origin or sponsorship, false advertising, and trade dress infringement under 15 U.S.C. § 1125(a) , and common law trademark infringement. *Id*. In the Complaint, Living Essentials' alleged that N2G was infringing its alleged rights in the highly descriptive phrase "5 hour energy" through N2G's use of the highly descriptive phrase "6 hour energy", as well as the highly similar trade dress aspects of N2G's bottle packaging or label. *Id*.

On March 13, 2008, Living Essentials filed a Motion for Temporary Restraining Order and Preliminary Injunction against N2G for its alleged acts of trademark and trade dress infringement. *See* Exhibit E, Case No. 2:08-cv-10983-PDB-MJH, Document 4. On April 9, 2008, this Court issued a Preliminary Injunction and Recall Order <u>granting in part and denying in part</u> Living Essentials' request for a preliminary injunction, a copy of which is attached hereto as Exhibit F. *See also* Case No. 2:08-cv-10983-PDB-MJH, Document 26. In particular, this Court granted Living Essentials' request for a preliminary injunction with respect to its trade dress infringement claim, finding that N2G's bottle label was remarkably similar with the exact same color scheme, font, and depiction of a silhouetted figure ascending a mountain, etc. *Id*. An image of the trade dress that N2G was enjoined from using is attached hereto as Exhibit G. Yet, this Court also denied Living Essentials' request for a preliminary injunction with respect to its

trademark infringement claim in connection with the highly descriptive phrase "6 Hour Energy Shot."

In the Opinion Granting Plaintiff's Motion for a Preliminary Injunction issued by this Court on April 14, 2008, the Honorable Paul D. Borman in denying the request for a preliminary injunction as to the phrase "6 Hour Energy Shot" found that:

> Given the fact that "5 Hour Energy" is highly descriptive, the Court finds that Plaintiff has not carried its "heavy burden," at this point in the case, to demonstrate that the primary significance of "5 Hour Energy" is to "identify the source of the product rather than the product itself." Furthermore, Defendants have produced a variety of competing two-ounce energy drink products from different manufacturers that use phrases such as "7 Hour Energy Boost," "6 Hour Energy!," "Extreme Energy Six Hour Shot," and "6 Hour Power" - thus diluting Plaintiff's potential claim that "5 Hour Energy" has a strong secondary meaning that particularly identifies its source.
>
> Therefore, the Court does not find that at this point in the case Plaintiff has demonstrated a "strong likelihood of success" on its trademark claim to support a preliminary injunction.

*See* Exhibit H, Case No. 2:08-cv-10983-PDB-MJH, Document 28, Page 8.

Shortly after this Court enjoined N2G from using the trade dress set forth in Exhibit G, Living Essentials issued False Advertisements entitled "RECALL OF '6 HOUR' SHOT ORDERED." *See* Exhibit I; Exhibit A, King Declaration, ¶ 8. The False Advertisements were sent in interstate commerce. The False Advertisements did not identify the manufacturer of the enjoined product, did not specifically identify the product, and did not illustrate the enjoined trade dress, but rather, referred to the enjoined product as the "6 Hour" product. *See* Exhibit I.

The press False Advertisements state, in relevant part:

**RECALL OF "6 HOUR" SHOT ORDERED**
*Court orders immediate stop to manufacturing, distributing
and sale of 6 Hour Energy shot.*

> We are pleased to announce that we won a decision against a "6 Hour" energy shot that closely mimicked 5-Hour Energy®. The United States District Court, in Case No. 08-CV-10983, issued a preliminary injunction ordering the immediate recall of all the "6 Hour" product, and told its manufacturer to stop making, distributing and selling it.
>
> If you have any of the "6 Hour" energy shots in your store(s) or warehouse(s) contact the product's manufacturer or your distributor to return the product immediately.

The False Advertisements go on to, in essence, promote the sale of Living Essentials' products. *See* Exhibit I.

As a result of Living Essentials' False Advertisements, numerous brokers and distributors of BDI's MINI THIN RUSH® products contacted BDI about returning BDI's MINI THIN RUSH® products. *See* Exhibit J, Declarations of Various BDI Brokers. In addition, customers of BDI contacted BDI's brokers and distributors about returning BDI's MINI THIN RUSH® products. *Id.* As a result of Living Essentials' False Advertisements, BDI has lost sales of BDI's MINI THIN RUSH® products. *See* Exhibit A, King Declaration, ¶ 13. Further, BDI had to have a public relations firm in New York help mitigate the damage done to BDI's business by assisting BDI with the release of an accurate press release that accurately identified the enjoined product.

### III.    <u>ARGUMENT</u>

This is a straightforward case of false advertising under the Lanham Act.  *See* 15

U.S.C. § 1125(a).  Living Essentials has falsely, misleadingly and deceptively issued the

False Advertisements in an attempt to unfairly compete with BDI.  Living Essentials'

misrepresentations have, and will continue to, if not enjoined by this Court, irreparably

harm BDI.  BDI therefore seeks a preliminary injunction to put a stop to Living

Essentials' unfair competition.

The Sixth Circuit has set forth the legal standard for evaluating motions for

preliminary injunctions:

> "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  Given this limited purpose, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits."  Accordingly, a party "is not required to prove his case in full at preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits."

> When considering a motion for preliminary injunction, a district court must balance four factors:
> (1) whether the movant has a strong likelihood of success on the merits;
> (2) whether the movant would suffer irreparable injury without the injunction;
> (3) whether issuance of the injunction would cause substantial harm to others; and
> (4) whether the public interest would be served by issuance of the injunction.

> These four considerations are "factors to be balanced, not prerequisites that must be met."  The district judge "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue."

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th

Cir. 2007) (internal citations omitted).

**A.    BDI Has a Strong Likelihood of Success on the Merits**

The Lanham Act is the statutory basis for a false advertising claim.  It states, in

relevant part:

> (a)(1)  Any person who, on or in connection with any goods or services …
> uses in commerce any word … or false designation of origin, false or
> misleading description of fact, or false or misleading representations of
> fact, which -
>       …
>     (B)  in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is
> or is likely to be damaged by such acts.

*See* 15 U.S.C. § 1125(a)(1)(B).

The Sixth Circuit has established a five-element test for plaintiffs seeking to prove

liability under the Lanham Act for false advertising.  In order to prove liability, a plaintiff

must establish the following:

> (1)  the defendant has made false or misleading statements of fact
> concerning his own product or another's;
> (2)  the statement actually deceives or tends to deceive a
> substantial portion of the intended audience;
> (3)  the statement is material in that it will likely influence a
> deceived consumers' purchasing decisions;
> (4)  the advertisements were introduced into interstate commerce;
> and
> (5)  there is some causal link between the challenged statements
> and harm to the plaintiff.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 689 (6th Cir. 2000), citing

*American Council of  Certified Podiatric Physicians and Surgeons v. American Bd. of*

*Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

Moreover, "where statements are literally false, a violation may be established

without evidence that the statements actually misled consumers.  Actual deception is

presumed." *Podiatric Physicians*, 185 F.3d at 613. In *Podiatric Physicians*, the Sixth Circuit also set forth a more lenient standard for obtaining injunctive relief under the Lanham Act: "injunctive relief may be obtained by showing only that the defendant's representations about its product have a <u>tendency to deceive</u> consumers ..." *Id*. at 618 (emphasis added). As such, for the purpose of the present motion, BDI is entitled to injunctive relief by only showing that Living Essentials' representations have a tendency to deceive.

### 1.    Living Essentials Has Made False and Misleading Statements of Fact Concerning Another's Products

Living Essentials has made false and misleading statements of fact in its False Advertisements. *See* Exhibit I. The False Advertisements falsely state that Living Essentials won a decision against a **"6 Hour"** shot, when in fact, they did not. It is important to note that the industry commonly refers to the products at issue as shots, because they typically come in two ounce bottles. See Exhibit A, King Declaration ¶ 6. The False Advertisements place the phrase "6 Hour" in quotation marks five times to clearly emphasize that it is the "6 Hour" product that was enjoined. This was purposefully, willfully, and intentionally done to falsely indicate to the intended audience that Living Essentials won a trademark type injunction against other "6 Hour" products and not a trade dress injunction against N2G. Living Essentials did this to obfuscate the Court's injunction because it was obviously unhappy with the ruling of this Court with respect to its trademark infringement claims. The False Advertisements then compound this action by failing to identify who was actually enjoined. No mention is made of N2G at all, and even though Living Essentials mentions the District Court's Case Number, it

cannot be an oversight that no mention or reference is made of the parties with the Case Number in the False Advertisements. *See* Exhibit I.

As a review of the record in the pending action against N2G demonstrates, Living Essentials was clearly denied a preliminary injunction against N2G's use of the highly descriptive phrase "6 Hour Energy Shot" in connection with energy shots. *See* Exhibit H, Case No. 2:08-cv-10983-PDB-MJH, Document 28. In the Court's issued opinion denying the injunction with respect to Living Essentials' trademark infringement claim, of which clearly Living Essentials was aware, the Court's opinion took notice of the fact that N2G had produced evidence of three other manufacturers that use phrases that include the highly descriptive phrase six hour in connection with their energy shots. In particular, the Court stated "[f]urthermore, Defendants have produced a variety of competing two-ounce energy drink products from different manufacturers that use phrases such as "7 Hour Energy Boost," "6 Hour Energy!," "Extreme Energy Six Hour Shot," and "6 Hour Power" - thus diluting the Plaintiff's potential claim that "5 Hour Energy" has a strong secondary meaning that particularly identifies its source." *See* Exhibit H, Case No. 2:08-cv-10983-PDB-MJH, Document 28, Page 8.

Thus, N2G was only enjoined from using the <u>trade dress</u> it was using in connection with its 6 Hour Energy Shot. As stated in the Court's opinion:

> Trade dress has been described by the Supreme Court as the "'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer or source.'"

> Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, [that] make[s] the source of the product distinguishable from another and . . . . promote[s] its sale. Trade dress involves the total image of a product and

> may include features such as size, shape, color or color combinations,
> texture, graphics, or even particular sales techniques.

*See* Exhibit H, Case No. 2:08-cv-10983-PDB-MJH, Document 28, Page 8.  As previously

set forth, the trade dress that N2G was preliminarily enjoined from using is attached

hereto as Exhibit G.  As indicated in the Court's opinion, "[t]he overall product packaging

image - the color scheme, fonts, and most significantly the graphical depiction of the

landscape and figure - create a protected overall product image."  *See* Exhibit H, Case

No. 2:08-cv-10983-PDB-MJH, Document 28, Page 10.

As such, the <u>truth</u> is that Living Essentials won a decision against N2G based on

having demonstrated a "protected overall product image," commonly referred to as trade

dress.  Living Essentials did not win a decision against a "6 Hour" shot as falsely stated in

the False Advertisements, but rather won a decision against N2G's use of a overall

product image (i.e. - the label) that was confusingly similar to Living Essentials' overall

product image.

Living Essentials' False Advertisements can accordingly hardly be said to be

truthful.  In this regard, the False Advertisements: 1) never refer to the enjoined parties

by name (i.e. - N2G Distributing, Inc. and Alpha Performance Labs); 2) never mention

the terms "trade dress," "package image," "label," "packaging," "product image," or any

other terms that would truthfully state what the injunction actually covered;  3) never

refer to N2G's product in quotation marks as the "6 Hour Energy Shot" (as referred to in

the Court's opinion) and as actually used by N2G on its label; 4) place the phrase "6

Hour" in quotation marks five times when referring to the enjoined product; 5) never

state that the decision was based on a product that was labeled in a confusingly similar

manner to their product; 6) do not provide an image of the enjoined product; and 7)

11

instruct people to return **any** "6 Hour" shot.  Living Essentials' False Advertisements lump together all "6 Hour" shot manufacturers and distributors, including BDI, never explaining truthfully that the injunction only applied to N2G and only due to trade dress issues.

Even assuming, for the sake of argument, that Living Essentials' False Advertisements are not literally false, it can hardly be argued that Living Essentials' False Advertisements are not misleading and deceptive.  Under this prong, although BDI only needs to show that Living Essentials' statements have a "tendency to deceive" to obtain injunctive relief, BDI has evidence that clearly demonstrates that its brokers or distributors were actually deceived and that customers of BDI's brokers were actually deceived by the False Advertisements.  *See* Exhibit J.  As clearly evident by the six Declarations contained in Exhibit J, brokers of BDI's MINI THIN RUSH® energy boosting products falsely believed that BDI's products were the subject of a court ordered recall.  In addition, customers of BDI's brokers were deceived, because customers also contacted the brokers about returning BDI's products after seeing the False Advertisements.  After all, the False Advertisements instructed the intended audience to return "any of the '6 Hour' shots in your store(s) . . ."  *See* Exhibit I.

In addition to the Declarations of BDI's brokers, BDI has other third-party evidence demonstrating the deception caused by Living Essentials' False Advertisements.  On June 17, 2008, an article appeared on BevNET.com entitled "Energy shot dispute confuses retailers."  *See* Exhibit K.  BevNET is recognized as an authority on the beverage industry and is an internationally-recognized resource for beverage industry professionals and consumers.  Obviously, Living Essentials' False Advertisements caused

so much confusion in the industry that BevNET decided it was worthy enough to write an article about the havoc caused by Living Essentials' False Advertisements and entitle the article "Energy shot dispute *confuses* retailers."  (emphasis added)

In summary, Living Essentials' False Advertisements contain literally false statements that have a tendency to deceive.  As such, this factor favors issuance of a preliminary injunction enjoining Living Essentials from issuing any further false and misleading statements.

### 2. Living Essentials' False Advertisements Actually Deceived and Tend to Deceive a Substantial Portion of the Intended Audience

Living Essentials' False Advertisements are directed towards brokers, distributors, and retailers who sell energy shots.  As set forth above, BDI's brokers and customers of BDI's brokers were deceived by Living Essentials' False Advertisements.  *See* Exhibit J.  In addition, a leading industry trade journal published an article about the confusion caused by Living Essentials' False Advertisements and the steps BDI was forced to take to keep its products on the shelves.  *See* Exhibit K.  Living Essentials' False Advertisements thus both clearly deceived a substantial portion of the intended audience and obviously tend to deceive a substantial portion of the intended audience.  As such, this factor is decisively in BDI's favor as well.

### 3. Living Essentials' Statements Are Material In that They Influence a Deceived Consumers' Purchasing Decisions

A deceived consumer is not going to purchase a product that it has been led to believe is the subject of a court ordered recall.  In fact, while attending a trade show after the False Advertisements were released in which BDI's MINI THIN RUSH® products

were displayed, Laura King, Vice President of BDI, was told by a potential customer who falsely believed BDI's products were the subject of the court ordered recall that they would not even try, let alone purchase the products because of their issues surrounding the purported recall despite assurances from Ms. King that the products were not subject to the recall. *See* King Declaration, ¶ 11. Thus, once again, this factor is decisively in favor of the issuance of an injunction against Living Essentials.

### 4. Living Essentials' False Advertisements Were Introduced Into Interstate Commerce

Living Essentials' False Advertisements were introduced into interstate commerce. At a minimum, Living Essentials published an advertisement in Convenience Store News entitled "LEGAL NOTICE" in the June 6, 2008 edition. *See* Exhibit L. BDI, which is located in Indiana, subscribes to this trade publication. Convenience Store News is a nationally published trade journal that proclaims itself to be the "#1 publication" in the industry. *See* Exhibit M. Living Essentials cannot argue that its False Advertisements were not introduced into interstate commerce and as such, this factor also falls decisively in BDI's favor.

### 5. There is a Causal Link Between the Challenged Statements and Harm to BDI

Living Essentials' False Advertising is causing brokers, distributors and customers to falsely believe that BDI's MINI THIN RUSH® energy boosting products are the subject of a court ordered recall. As such, BDI's business has been unfairly disrupted by having to deal with brokers, distributors, and retailers who falsely believe that products

they are selling are subject to a court ordered recall. Clearly there is a causal link between the False Advertisements and the harm being done to BDI.

**B.      BDI Has and Will Continue to Suffer Irreparable Injury Without an Injunction**

As Living Essentials argued in the N2G case, courts have long adopted a presumption that irreparable injury arises from Lanham Act violations. *See e.g. Time Warner Cable Inc. v. DirectTV Inc.*, 497 F.3d 144, 161-162 (2d Cir. 2007); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006). This Court has previously held that it should presume irreparable harm where a plaintiff demonstrates false or misleading advertising in violation of the Lanham Act. *See e.g.* - *Mexican Food Specialties Inc. v. Festida Foods Ltd.*, 953 F. Supp. 846, 854 (E.D. Mich. 1997); *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1229 (E.D. Mich. 1991). Moreover, the Sixth Circuit holds that:

> "A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." (citations omitted) The irreparable injury flows "both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values ..."

*See Wynn Oil Co. v. American Way Serv. Corp.* 943 F.2d 595, 608 (6th Cir. 1991). As such, this Court should presume that irreparable harm exists because BDI has demonstrated a substantial likelihood of success on the merits.

Here, BDI's reputation and goodwill in the industry has been and is being irreparably damaged by Living Essentials' False Advertisements because its products reputation are being tarnished as falsely being the subject of a court ordered recall. In addition, BDI's business reputation and goodwill in the industry is being damaged by

Living Essentials' False Advertising.  BDI has and will also to continue to suffer negative economic consequences as a result of Living Essentials' conduct complained of herein.  See also *Lorillard,* 453 F.3d at 382 (holding also that "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition.").

### C.     Issuance of the Injunction Will Not Cause Substantial Harm to Others

BDI has suffered and will continue to suffer substantial harm if a preliminary injunction does not issue.  Other than Living Essentials' desire to unfairly compete with BDI, no legitimate purpose is served through allowing Living Essential to continue to make false and misleading statements.  No other parties other than BDI and Living Essentials will be affected by a properly worded injunction.  BDI has invested a substantial amount of time and money in developing its products and getting them to market.  BDI has also built up a substantial amount of goodwill in the industry that is being harmed by Living Essentials' conduct.  Any harm that may be caused to Living Essentials should be discounted because the harm was brought upon itself by issuing false and misleading statements in the False Advertisements.

### D.     The Public Interest Is Served by Truthful Advertising

There is a public interest in "preventing confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co.*, 453 F.3d at 383.  It should also come as no surprise that courts have found a strong public interest in preventing false and misleading advertising.  *See e.g. Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982)*;

*American Home Products Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987). Finally, the public interest favors entry of a preliminary injunction in this case because "the public is interested in fair competitive practices and clearly opposed to being deceived in the marketplace." *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1382 (D. N.J. 1981). This factor thus also favors entry of a preliminary injunction enjoining Living Essentials' unfair trade practices.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant a preliminary injunction enjoining Living Essentials from issuing False Advertisements as well as requiring Living Essentials to correct the False Advertisements in the market.

17

Date:  July 25, 2008                    Respectfully submitted,

                                        **Body Dynamics, Inc.**


                                        /s/ Deborah J. Swedlow
                                        J. Michael Huget - P39150
                                        Deborah J. Swedlow - P67844
                                        BUTZEL LONG
                                        350 South Main Street, Suite 300
                                        Ann Arbor, MI  48104

                                        Telephone:  (734) 213-3628
                                        Facsimile:  (734) 995-1777

                                        Email:  huget@butzel.com
                                                swedlow@butzel.com

                                        Dean E. McConnell
                                        Scott S. Morrisson
                                        KRIEG DEVAULT LLP
                                        One Indiana Square, Suite 2800
                                        Indianapolis, IN  46204


                                        Telephone:  (317) 636-4341
                                        Facsimile:  (317) 636-1507

                                        Email:  dmcconnell@kdlegal.com
                                                smorrisson@kdlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 25, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

               Mark A. Cantor
               Marc Lorelli
               1000 Town Center - 22nd Floor
               Southfield, Michigan  48075

               Email:  mcantor@brookskushman.com
                       mlorelli@brookskushman.com

                         /s/ Deborah J. Swedlow_____
                         J. Michael Huget
                         Deborah J. Swedlow
                         BUTZEL LONG
                         350 South Main Street, Suite 300
                         Ann Arbor, MI  48104

                         Telephone:  (734) 213-3628
                         Facsimile:  (734) 995-1777

                         Email:  huget@butzel.com
                                 swedlow@butzel.com