UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATION VENTURES, LLC
d/b/a LIVING ESSENTIALS,

    Plaintiff/Counterclaim Defendants,

vs.                                            CASE NO.: 2:08-CV-12711

                                               DISTRICT JUDGE GERALD E. ROSEN
                                               MAGISTRATE JUDGE STEVEN D. PEPE

BODY DYNAMICS, INC.
d/b/a BDI MARKETING,

    Defendant/Counterclaimant.
_____/

**Report and Recommendation**

**I.    INTRODUCTION**

Plaintiff Innovation Ventures, LLC ("Living Essentials") and Defendant Body Dynamics, Inc. ("BDI") sell dietary supplements formulated as energy drinks in the form of a shot. Living Essentials filed this complaint in June 2008, claiming that BDI infringed on its trademarked "5 HOUR ENERGY®" phrase and illustrations on the packaging of its energy shots by using a substantially similar phrase "6 HOUR ENERGY" and illustrations on the packaging of its own energy shots and false advertising. BDI counterclaimed for false and/or misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a), tortuous interference with contractual and business relationships, criminal mischief and deception arising from Living Essentials' mass dissemination of a purported legal notice concerning a recall of "6 Hour" energy shots, unfair

competition, and a declaratory judgment of invalidity of the Supplemental Registration for the highly descriptive phrase "5 hour energy" under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

BDI has filed a Motion for Preliminary Injunction, requesting that this Court enjoin Living Essentials from presenting to the public a preliminary injunction order Living Essentials obtained in a separate case. [1] That case does not involve Defendant BDI or BDI's products but Living Essentials is purportedly creating the impression that BDI's product was the subject of a court ordered recall, and these acts are causing irreparable damage to BDI. The Court finds that the facts and legal arguments are adequately present in the parties' papers and the decision process would not be significantly aided by oral arguments; therefore, the motion will be resolved on the briefs submitted pursuant to E.D. Mich. L.R. 7.1(e)(2). For the reasons below, it is recommended that Defendant's Motion for Preliminary Injunction be GRANTED.

**II.    FACTUAL BACKGROUND**

BDI and Living Essentials are competitors in the energy booster market.

In September 2007, BDI began selling dietary supplements formulated as an energy booster under the MINI THIN RUSH® Trademark. The MINI THIN RUSH® dietary supplement is sold by BDI in a liquid, capsule, and chewing gum form. The MINI THIN RUSH® liquid energy booster, the two ounce energy shot, contains the phrase "6 Hour Energy!" at the top of the label (Dkt. #12, Exhibit B).

---

[1] Innovation Ventures, LLC v. N2G Distributing Inc. and Alpha Performance Labs, 08-10983, E.D. Mich. (Borman J.). On September 9, 2008, BDI filed a motion to consolidate cases (Dkt. #21) which was denied on September 29, 2009 (Dkt. #24).

Living Essentials also sells an energy drink in the form of a shot that provides the body with an energy boost with a trademarked phrase, "5-hour ENERGY®." (Dkt #12, Exhibit C). Since September 2004, Living Essentials has been using the phrase which they trademarked in September 2005 (Dkt. #17, Ex. 3).

On April 9, 2008, this Court in *Innovation Ventures, LLC v. N2G Distributing Inc. and Alpha Performance Labs*, Case No. 08-10983, issued a Preliminary Injunction and Recall Order granting in part and denying in part Living Essentials' request for a preliminary injunction. The Court granted Living Essentials's request for a preliminary injunction with respect to its trade dress infringement claim, finding that N2G's bottle label was remarkably similar with the exact same color scheme, font, and depiction of a silhouetted figure ascending a mountain. The Court, however, did not enjoin N2G from using the descriptive phrase "6 Hour Energy Shot."

Judge Paul D. Borman explained why he denied Living Essentials' request for a preliminary injunction as to the phrase "6 Hour Energy Shot" found that:

> Given the fact that "5 Hour Energy" is highly descriptive, the Court finds that Plaintiff has not carried its "heavy burden," at this point in the case, to demonstrate that the primary significance of "5 Hour Energy" is to "identify the source of the product rather than the product itself." Furthermore, Defendants have produced a variety of competing two-ounce energy drink products from different manufacturers that use phrases such as "7 Hour Energy Boost," "6 Hour Energy!," "Extreme Energy Six Hour Shot," and "6 Hour Power" - thus diluting Plaintiff's potential claim that "5 Hour Energy" has a strong secondary meaning that particularly identifies its source.
>
> Therefore, the Court does not find that at this point in the case Plaintiff has
> demonstrated a "strong likelihood of success" on its trademark claim to support a preliminary injunction.

(April 14, 2008, Opinion Granting Plaintiff's Motion for a Preliminary Injunction ,Dkt. #28, p 8,

Case No. 2:08-cv-10983).

Shortly after the April 14 injunction was issued, on or about May 29, Living Essentials issued a press release and notice to customers entitled "RECALL OF '6 HOUR' SHOT ORDERED" ("the press release"). The press release states, in relevant part:

> **RECALL OF "6 HOUR" SHOT ORDERED**
>
> *Court orders immediate stop to manufacturing, distributing and sale of 6 Hour Energy shot.*
>
> Dear Customer,
>
> We are pleased to announce that we won a decision against a "6 Hour" energy shot that closely mimicked 5-Hour Energy®. The United States District Court, in Case No. 08-CV-10983, issued a preliminary injunction ordering the immediate recall of all the "6 Hour" product, and told its manufacturer to stop making, distributing and selling it.
>
> If you have any of the "6 Hour" energy shots in your store(s) or warehouse(s) contact the product's manufacturer or your distributor to return the product immediately.
>
> **DO NOT RETURN ANY 5-HOUR ENERGY®.** It can be difficult to tell 5-Hour Energy® apart from the "6 Hour" knockoff product. If you have any questions, please call us at 248-950-1700 ext. 217.
>
> * * *

(Dkt. #17, Ex. 7). The press release did not identify the manufacturer of the enjoined product, did not specifically identify the product, and did not illustrate the enjoined trade dress. This release was published as a LEGAL NOTICE in the June 6, 2008, edition of the Convenience Store News the primary industry publication. (Laura King Declaration, ¶ 10, Ex. C, Dkt. #12, Exhibit A). As a result of the press release and legal notice, numerous brokers and distributors

4

of BDI's MINI THIN RUSH® products contacted BDI about returning BDI's MINI THIN RUSH® products. In addition, customers of BDI contacted BDI's brokers and distributors about returning BDI's MINI THIN RUSH® products. Because of responding to the inquiries and lost sales, BDI hired a public relations firm to help mitigate the damage done to BDI's business.

Prior to the filing of the motion, Living Essentials informed BDI that it had no plans to further distribute the press release, and several months have passed since it was disseminated.

## IV.   RELEVANT LEGAL STANDARD

In order to determine whether to grant a preliminary injunction, a district court must consider: "(1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir.2001). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (internal citations omitted).

## IV.   ANALYSIS

### A.)  The likelihood of success on the merits

In order to establish a violation of the Lanham Act, a plaintiff (or in this case the counterclaimant) must establish the following:

> (1) the defendant has made false or misleading statement of fact concerning his own product or another's;
> (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience;
> (3) the statement is material in that it will likely influence a deceived consumers' purchasing decisions;

>(4) the advertisements were introduced into interstate commerce; and
>(5) there is some causal link between the challenged statements and harm to the plaintiff.

*Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 689 (6th Cir. 2000), citing *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). "[I]njunctive relief may be obtained by showing only that the defendant's representations about its product have a tendency to deceive consumers ..." *Id.* at 618 (emphasis added).

### (1.) Misleading Statement

The press release is misleading in that it states that Living Essentials "won a decision against a '6 Hour' energy shot that closely mimicked 5-Hour energy," when in fact, they won a trade dress injunction against N2G, the opposing party. Other than this statement Living Essentials failed to identify the actual product or its manufacturer that was enjoined. The mention of the District Court's Case Number in its press release does not serve to communicate to the public with specificity at to which product or party were enjoined. Judge Borman had specifically denied a preliminary injunction against N2G's use of the highly descriptive phrase "6 Hour Energy Shot" in connection with energy shots, in part because three other manufacturers use the six hour phrase in connection with their energy shots. As quoted above Judge Borman noted how other drinks such as "7 Hour Energy Boost," "6 Hour Energy!," "Extreme Energy Six Hour Shot," and "6 Hour Power" were distributed in the market place diluting Plaintiff's potential claim that "5 Hour Energy" has a strong secondary meaning that particularly identifies

its source. (Dkt. #12, Exhibit H, Page 8). It was the similarity of the trade dress that was the basis of the injunction, not the use of the term "'6 Hour' energy." Living Essentials did not win a decision against a "'6 Hour' energy shot" as stated in the press release, but rather won a decision against N2G's use of a overall product image (i.e. - the label and bottle) that was confusingly similar to Living Essentials' overall product image.

Living Essentials contends that the source of confusion is not the press release, as BDI claims, but rather BDI's use of the confusingly similar "6 HOUR ENERGY!" in conjunction with its mark. Living Essentials argues that BDI's use of "6 HOUR ENERGY!" in conjunction with MINI THIN RUSH® infringes upon Living Essentials' "5 hour ENERGY®" trademark and if Living Essentials prevails, BDI will have no proprietary interest in the use of "6 HOUR ENERGY!" and, consequently, no grounds upon which to pursue its false advertising claim (or the remaining counterclaims).

Living Essentials, however, conflates two separate issues, (1.) the charges in their complaint against BDI that the phrase "6 HOUR ENERGY!" on BDI's MINI THIN RUSH® infringes Living Essentials' "5 HOUR ENERGY®" trademark, and (2.) the press release that suggests that a federal court issued injunction ordering an immediate recall of all drinks that have "6 HOUR ENERGY!" on their label.

Living Essentials argues that the Court must first determine whether BDI has a likelihood of success on Living Essentials' underlying claim of trademark infringement. BDI's counterclaims, however, are separate and have nothing to do with the merits of Living Essentials' trademark infringement allegations. The preliminary injunction only deals with the second of these issues, as to the misleading nature of continued use of the press release, letters to

customers or legal notice publications that suggests a federal court has ordered an immediate recall of BDI's product, when no such order exists.  Living Essentials could easily have avoided the confusion by identifying the manufacturer and the trade dress (possibly including a picture as they did in their complaint and motion papers before Judge Borman)  of the enjoined product in the press release but chose not to do so.

Unless and until Living Essentials established that use of "6 HOUR ENERGY!" on BDI's MINI THIN RUSH® product label infringes a valid trademark in Living Essentials' "5 HOUR ENERGY®", it is misleading to represent that all energy products such as  BDI's MINI THIN RUSH® that have  "6 HOUR ENERGY!" on their label are subject to a federal court's recall order that was limited to N2G 's "6 Hour Energy Shot."

Living Essentials also argues that BDI's motion is moot because it does not intend to publish the press releases again in the future. Voluntary cessation of complained of conduct does not render a claim for injunctive relief moot. *Lehnert v. Ferris Faculty Ass'n-MEA-NEA*, 556 F.Supp. 309, 312-313 (W.D. Mich. 1982)(internal citations omitted).  Without issuance of an injunction, BDI would have no assurance other than its competitor's word, that the press release would not be reissued.  Furthermore, BDI seeks an order that Living Essentials correct its false advertisement in the market.  BDI has established that Living Essentials's press release and letter to retailers contain a false statement –  the first element of the *Balance Dynamics* test for preliminary injunction.

**(2.) Deceive**

Under this prong of the analysis, BDI only needs to show that Living Essentials' statements have a "tendency to deceive" to obtain injunctive relief.  BDI has demonstrated that

its brokers, distributors and customers of BDI's brokers were actually deceived by the press release into a belief that there was a recall on "any of the '6 Hour' shots in your store(s) . . ." including BDI's MINI THIN RUSH® energy boosting products. Several broker/distributor of BDI's product saw the press release or correspondence issued by Living Essentials and believed that BDI's MINI THIN RUSH® was subject to recall. (Dkt. #12, Exhibit J).  BDI's Marketing Vice President on June 14, 2008, when offering samples of MINI THIN RUSH® at a trade show in Indianapolis had a convenience store manager who had seen the Living Essentials recall notice refuse to take the free sample believing it to have been recalled because something was wrong with the product.(Laura King Declaration, ¶ 11,  Dkt. #12, Exhibit A). On June 17, 2008, an article appeared on BevNET.com[2] entitled "Energy shot dispute confuses retailers." (Dkt. #12, Exhibit K).  BDI has demonstrated that the press release and letter tend to deceive and did deceive a significant portion of the intended audience.

### (3.) Materiality

A deceived consumer is less likely to purchase a product that they believe is the subject of a court ordered recall.   As noted in the declaration of BDI's Marketing Vice President after the press release at an Indianapolis trade show a convenience store manager who saw the Living Essentials' release believed that BDI's products were the subject of the court ordered recall because there was something wrong with the product and that potential customer not even try the free sample despite assurances from Ms. King that the products were not subject to the recall.(Laura King Declaration, ¶ 11,  Dkt. #12, Exhibit A).  Thus the Living Essentials' press

---

[2]BevNET.com is a website dedicated to beverage news and reviews.

release, legal notice and letters contain a misleading statement that is material.

### (4.) Interstate Commerce

Living Essentials published the press release in Convenience Store News[3] entitled "LEGAL NOTICE" in the June 6, 2008 edition. (Dkt. #12, Ex L). BDI, which is located in Indiana, subscribes to this trade publication. Thus the press release was introduced into interstate commerce.

### (5.) Causal Link Between the Challenged Statements and Harm to BDI

The press release is causing brokers, distributors and customers to believe that BDI's MINI THIN RUSH® energy boosting products are the subject of a court ordered recall. As such, BDI's business has been disrupted by having to deal with brokers, distributors, and retailers with this misperception.

## B. Irreparable Injury Without an Injunction

Courts have long adopted a presumption that irreparable injury arises from Lanham Act violations. *See e.g. Time Warner Cable Inc. v. DirectTV Inc.*, 497 F.3d 144, 161-162 (2d Cir. 2007); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) (holding also that "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition."). This Court has

---

[3] Convenience Store News is a nationally published trade journal that proclaims itself to be the "#1 publication" in the industry (Dkt. #12, Ex M).

also held that a presumption arises that irreparable harm occurs where a plaintiff has demonstrated false or misleading advertising in violation of the Lanham Act. *See e.g. Mexican Food Specialties Inc. v. Festida Foods Ltd.*, 953 F. Supp. 846, 854 (E.D. Mich. 997); *Janda v. Riley-Meggs Indus., Inc.*, 764 F. Supp. 1223, 1229 (E.D. Mich. 1991). Here, the press release caused damage to BDI's reputation and goodwill in the industry because its products reputation are being tarnished as being the subject of a court ordered recall of which it is not the subject. As such, Plaintiff is experiencing irreparable harm.

### C. No Substantial Harm to Others

Living Essentials has failed to demonstrate a legitimate purpose to allow it to continue to use the misleading press release. The press release as it reads fails to specify the product and party affected or the specific reason for the recall. Enjoining the use of the misleading press release would not harm others, including Living Essentials.

### D. The Public Interest

There is a public interest in "preventing confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co.*, 453 F.3d at 383. The public interest is served by "fair competitive practices and clearly opposed to being deceived in the marketplace." *Estate of Presley v. Russen*, 513 F. Supp. 1339, 1382 (D. N.J. 1981). This factor thus also favors entry of a preliminary injunction enjoining Living Essentials' use of the press release.

**III      RECOMMENDATION**

For the reasons stated above, **IT IS RECOMMENDED** that Defendant/Counterclaimant's motion for preliminary injunction be **GRANTED**.  **IT IS FURTHER RECOMMENDED** that Living Essentials be ordered to issue a clarification to all customers receiving its earlier correspondence and in the LEGAL NOTICE section of Convenience Store News that the federal court recall was limited to N2G's "6 Hour Energy Shot" because of the similarity of its label and bottle to Living Essentials 5 HOUR ENERGY® and clarifying specifically that BDI's MINI THIN RUSH® was not and is not subject to that or any court ordered recall.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  A

party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

s/Steven D. Pepe
United States Magistrate Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 28, 2008.

S/V. Sims
Case Manager