**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DISTRICT**

INNOVATION VENTURES, LLC
d/b/a LIVING ESSENTIALS,

    Plaintiff/Counterclaim Defendant,

v.                                        Case No. 08-12711

                                          Hon. Gerald E. Rosen
                                          Magistrate Judge Steven D. Pepe

BODY DYNAMICS, INC.
d/b/a BDI MARKETING,

    Defendant/Counterclaimant.
_____/

**OPINION AND ORDER ADOPTING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 30, 2009   

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

On October 28, 2008, Magistrate Judge Steven D. Pepe issued a Report and

Recommendation ("R & R") recommending that the Court grant the motion for preliminary

injunction brought by Defendant Body Dynamics, Inc. ("BDI") against Plaintiff Innovation

Ventures, LLC ("Living Essentials").  Plaintiff filed objections to the R & R on November 12, 2008,

and Defendant responded to these objections on November 25, 2008.  Plaintiff subsequently

filed a reply, followed by Defendant's sur-reply.[1]  Having reviewed the R & R, the parties'

---

[1] Defendant's sur-reply was accompanying by a motion seeking leave to file this brief.  Because the Court has found this sur-reply modestly helpful to its inquiry, the requested leave is granted.

subsequent submissions, and the record as a whole, the Court fully concurs in the Magistrate Judge's analysis, and adopts the R & R in its entirety as the opinion of this Court.

Living Essentials first argues that issuing a preliminary injunction without a hearing on the motion is improper, particularly where the requested preliminary injunction would impose an affirmative obligation before the completion of discovery and disturb the status quo. Pursuant to Local Rule 7.1(e)(2) of this District, however, a judge may dispense with oral argument as deemed appropriate in a particular case. Having reviewed the parties' briefs and accompanying exhibits, the Court cannot say that the Magistrate Judge erred in determining that oral argument would not significantly assist in the resolution of Defendant's motion. Neither has Plaintiff identified any specific benefit that oral argument might have produced under the particular circumstances of this case.[2] Accordingly, this objection lacks merit.

Next, Living Essentials objects to the Magistrate Judge's analysis under the "likelihood of success" prong of the four-part test for issuing preliminary injunctive relief. In particular, Plaintiff asserts that the Court should not look in isolation at BDI's Lanham Act counterclaim, but should consider the likelihood of success of this counterclaim in light of the merits of Plaintiff's own trademark infringement claim against BDI. In Plaintiff's view, if it prevails on its claim that BDI's use of the phrase "6 HOUR ENERGY" infringed upon Living Essentials' "5 HOUR ENERGY" mark, BDI would have no propriety interest in the use of the mark "6 HOUR ENERGY," and therefore no grounds to claim injuries from false advertising.

---

[2]It also is worth noting that the injunctive relief requested by Defendant "disturbs" the status quo in only a very modest way — it does not impact Plaintiff's day-to-day business in any way, but merely requires that Plaintiff correct a misleading press release it issued in the past.

This argument, however, ignores the present procedural posture of this case. At the moment, Plaintiff has done nothing more than allege that BDI's use of the phrase "6 HOUR ENERGY" infringes upon Plaintiff's "5 HOUR ENERGY" mark. Unlike Defendant, Plaintiff has not moved for a preliminary injunction, and has not invited the Court to assess the likelihood that its allegations can be proven. Accordingly, unless and until Plaintiff prevails on its claim, Defendant is entitled to continue to use the phrase "6 HOUR ENERGY" on its products, and to defend these products against the false claims of its competitors. This is all that Defendant seeks to do through its present motion. If Plaintiff succeeds in foreclosing Defendant from any further use of the phrase "6 HOUR ENERGY," then it may well be that Defendant cannot claim any further false advertising injuries beyond that point. The Court need not predict the likelihood of this eventual outcome in order to award the limited preliminary injunctive relief sought by Defendant in the meantime.

Plaintiff next objects that the Magistrate Judge erroneously found its press release to be misleading. Living Essentials argues that the Magistrate Judge failed to identify any misstated facts in the release, but instead focused inordinately on Living Essentials' statement that it "won a decision" rather than a trade dress injunction. Further, Living Essentials contends that it took steps to avoid misleading its audience by providing its contact information for any questions or concerns, and by indicating in the release that the court order applied only to a single product and manufacturer through the use of "singular" words such as "the," "its," and "a."

This Court is satisfied that the Magistrate Judge's analysis properly considered Living Essential's press release in its entirety. (See R & R at 6-8). As explained in the R & R, Living Essentials' statement that it "won a decision against a '6 Hour' energy shot that closely mimicked 5-Hour Energy" was misleading in its failure to identify which product was the subject of the decision, thereby casting a cloud upon all energy products (including BDI's) that refer to "6-Hour Energy" on their labels. (*Id.* at 8.) To date, Living Essentials has not established that BDI's use of "6 HOUR ENERGY" on its product infringes upon Living Essentials' "5 HOUR ENERGY" trademark. While Judge Borman did issue a preliminary injunction against the use of Living Essentials' trade dress (overall product image) by another competitor company, N2G Distributing Inc. (N2G), in a separate action, *see Innovation Ventures, LLC v. N2G Distributing, Inc.,* No. 08-10983, the Court in that case specifically denied preliminary injunctive relief based upon N2G's use of the phrase "6 Hour Energy Shot," in part because various other manufacturers use the "six hour" phrase. (*See* Dkt. #12, Exhibit H, Page 8.)[3] Moreover, Living Essentials' cited examples of its attempts to avoid confusion — *i.e.,* its use of "singular" words to indicate that the court's ruling applied to a single product and manufacturer, and its invitation to the reader to call with any questions — are modest at best. As observed in the R & R, Living Essentials could easily have avoided any possibility of confusion by identifying the actual manufacturer and product enjoined in its release. (*See* R & R at 8.)

Next, Living Essentials objects to the purported lack of evidence that its press release had a tendency to deceive a substantial portion of its intended audience. The Court agrees

---

[3]In light of this ruling, even if this Court were obliged to consider the likelihood of success of Plaintiff's trademark claim in determining Defendant's entitlement to preliminary injunctive relief, Judge Borman's decision would seem to cut against the prospect for Plaintiff's success here.

with the Magistrate Judge, however, that the declarations submitted by several broker/distributors of BDI's product and BDI's Marketing Vice President, as well as an article that appeared in an on-line trade publication, are sufficient to satisfy BDI's burden of proof. (See R & R at 8-9.)  In addition, this Court notes that in response to Plaintiff's objections, Defendant has produced additional evidence that further demonstrates the press release's tendency to deceive a significant portion of the intended audience.[4]

As its next objection to the R & R, Living Essentials claims that BDI failed to present any evidence of a causal link between the challenged statements and harm to BDI.  Living Essentials argues that the distributor affidavits showing deception are not sufficient to show disruption to BDI's business by calls to return BDI products, and that BDI's claims of lost sales and returned products are unsubstantiated and possibly due to other market factors.  As explained in the R & R, there is evidence that Plaintiff's press release caused brokers, distributors, and customers to believe that BDI's MINI THIN RUSH products, as well as other products in the "6 Hour" category, were subject to a court-ordered recall, and that this caused disruption to BDI's business in having to deal with brokers, distributors, and retailers who were confused or deceived by the release.  (*See* R & R at 4-5, 10.)

---

[4] As set forth in BDI's response, there is evidence that a trade journal expressed concern regarding Living Essentials' submission of a proposed advertisement restating its press release, and required identification of the manufacturer and product actually enjoined by the court order to ensure that the notice did not confuse its audience. BDI also provides some evidence of retailer confusion, where a manager for the 7-Eleven convenience store chain questioned the manner of the recall process used by Living Essentials.  Although not actual evidence of deception, this provides additional support for the proposition that Plaintiff's press release was confusing to those in the intended audience.  Finally, Defendant has produced internal Living Essentials emails documenting issues with a specific distributor, who complained that the letter sent by Living Essentials "cost him some accounts and killed his 6 Hour Power business," and requested samples to "recover the business he said he's lost by replacing the 6 Hour with… [Living Essentials'] 5 Hour at retail."  (BDI Marketing's Sur-Reply , Exs. A, B.)

Next, Living Essentials objects to the Magistrate Judge's finding of irreparable harm, arguing that this finding rests upon an improper presumption of irreparable harm once a false or misleading advertisement is established. In support of this challenge, Plaintiff cites *eBay v. MercExchange, LLC*, 547 U.S. 388, 393-94, 126 S. Ct. 1837, 1841 (2006), a patent case in which the Court held that the traditional four-factor test for permanent injunctive relief should not be relaxed through presumptions. Yet, at least one decision from this District suggests that *eBay* should be limited to the context of permanent injunctive relief. *See Christiana Industries v. Empire Electronics, Inc.*, 443 F. Supp.2d 870, 884 (E.D. Mich. 2006). Moreover, in decisions that post-date *eBay,* the Sixth Circuit has continued to recognize a presumption of irreparable harm in trademark cases where a "likelihood of confusion or possible risk to reputation appears from infringement or unfair competition." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377, 382 (6th Cir. 2006) (internal quotation marks and citation omitted); *see also Ignition Athletic Performance Group, LLC v. Hantz Soccer U.S.A., LLC,* No. 06-2308, 245 F. App'x 456, 460 (6th Cir. Aug. 8, 2007). In any event, notwithstanding any such presumption, the Court is satisfied that BDI has produced evidence showing that Living Essentials' press release brought a substantial degree of confusion to the marketplace, and thereby caused harmed to BDI's reputation and goodwill among the intended audience.

Living Essentials next suggests that BDI's request for preliminary injunctive relief is moot, where it has no plans to reissue the offending press release, any harm caused by this release has been mitigated through the passage of time, and BDI has issued its own corrective press release informing the public that the court-ordered recall did not apply to its MINI THIN

RUSH products.  In support of this objection, Living Essentials cites *Lucero v. Detroit Public Schools*, 160 F.Supp.2d 767, 802 (E.D. Mich. 2001), which states that "[w]here the nonmovant has taken remedial action, the balance of harms is readjusted because the potential for harm to the movant has been eliminated."

In this case, the nonmovant, Living Essentials, has not taken any remedial action, and therefore the balance of harms has not been readjusted.  Moreover, and as explained in the R & R, Living Essentials' voluntary cessation from further distribution of its press release has not altogether eliminated the potential for additional harm, where BDI has no assurance other than Living Essentials' word, that the release will not still be reissued.  (*See* R & R at 8.)  In addition, while BDI did attempt to mitigate the harm by issuing its own clarifying notice, the effect of this plainly is more limited than if the initial issuer of the offending press release, Living Essentials, itself explains the exact extent of the court-ordered recall.  Furthermore, as explained in the R & R, enjoining any further distribution of the misleading press release and requiring issuance of a corrective notice will not cause substantial harm to Living Essentials or others, and serves the public interest in preventing deceptive practices in the marketplace.  (*Id.* at 11.)

Finally, Living Essentials argues that the Magistrate Judge erred in failing to address the question of bond under Fed. R. Civ. P. 65(c) upon recommending that preliminary injunctive relief be awarded.  Yet, it is within the Court's discretion to determine the amount of any such security, *see* Fed. R. Civ. P. 65(c), and in this case, the Court finds that no such security is necessary.  Living Essentials is required only to refrain from distributing or publishing any further misleading releases, legal notices, or letters regarding the N2G product recall, and to

issue a correction explaining that BDI products are not subject to the court-ordered recall. Under these circumstances, even if Living Essentials ultimately is found to have been "wrongfully enjoined" through the Court's issuance of preliminary injunctive relief, *see* Fed. R. Civ. P. 65(c), the costs and damages to Living Essentials would surely be minimal.

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Magistrate Judge's October 28, 2008 Report and Recommendation is ADOPTED as the opinion of the Court. IT IS FURTHER ORDERED that, for the reasons stated in the R & R as supplemented by this opinion and order, Defendant/Counterclaimant's motion for preliminary injunction (docket #12) is GRANTED. Finally, IT IS FURTHER ORDERED that Defendant/Counterclaimant's motion for leave to file a sur-reply brief (docket #40) is GRANTED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager